U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAR 1 8 2013
AT____O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHAD R. GOETZ,**<br><br>Plaintiff<br><br>vs.<br><br>**RICHARD J. BOUDREAU & ASSOCIATES, LLC,**<br>Defendant | Civil Case No.: 5:13-cv-51 (NAM/DEP)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT RICHARD J. BOUDREAU & ASSOCIATES, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(B)(6).** |

Plaintiff respectfully moves this Court to deny Defendant Richard J. Boudreau & Associates LLC's Motion to Dismiss for failure to state a claim upon which relief can be granted and requests that the Court instruct them to answer the Complaint.

## I.   PRELIMINARY STATEMENT

Plaintiff submits this response in opposition to Defendant Richard J. Boudreau and Associates, LLC's (hereinafter "RJBA") Motion to Dismiss the Complaint. The Complaint alleges violations of the Fair Credit Reporting Act (FCRA) which was enacted by Congress in response to the abuses rampant within the consumer reporting industry at the time of its enactment in 1970, and which continue to this day. One of the principle functions of the FCRA was to protect against undue invasions of a consumer's right to privacy, which is the crux of the present controversy. Defendant openly admits to accessing Plaintiff's Experian report on two occasions in October 2011, but incorrectly presumes that just the mere fact that it operates as a debt collector gives it *carte blanche* authority to access consumer reports to collect on an alleged debt of a consumer. In support of its position, Defendant misrepresents the case law it cites and provides only a thin and superficial analysis of the issues to the Court. Furthermore, many of the issues which they ask this Court to determine as a matter of law are

fact-dependent, and cannot be resolved without discovery. Their motion should be denied, and they should be directed to serve an answer to the Complaint. In the alternative, Plaintiff should be granted leave to amend the Complaint to the extent the Court determines that any essential factual allegations are lacking, and he respectfully requests leave to do so.

## II.     STANDARDS ON A 12(b)(6) MOTION

Defendant RJBA moves pursuant to F.R.Civ.P. 12(b)(6) to dismiss this action on the grounds of failure to state a claim upon which relief can be granted. But the standards for granting such a motion are demanding. Plaintiffs need plead only "enough facts to state a claim to relief that is plausible on its face" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim will have "facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Although "[s]pecific facts are not necessary," *Erickson v. Pardus*, 551 U.S. 89, 93 (2009), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The complaint must be construed liberally, all of its factual allegations must be accepted as true, and the Court must draw all reasonable inferences in Plaintiffs' favor, *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009). "[A] motion to dismiss does not involve consideration of whether a Plaintiff will ultimately prevail on the merits, but instead solely whether the claimant is entitled to offer evidence in support of his claims." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010). Under these standards, the Court should deny this motion and direct the Defendant to answer the Complaint.

### III.   STATEMENT OF THE FACTS

Plaintiff filed suit against RJBA on January 14, 2013, alleging violations of the Fair Credit Reporting Act (FCRA) after having discovered that RJBA had obtained his Experian consumer report on two separate occasions in less than a week's time, on October 7th, 2011 and again on October 13th, 2011.  The Defendant claims that the inquiries into Plaintiff's consumer report were done in connection with collecting on an alleged debt to Citizens Bank of Rhode Island, and that RJBA was retained by them "on or about October 2011" to do so (see Defendant's Motion to Dismiss, Section II "Factual Background").  To support its position, Defendant moves outside the four corners of the complaint by attaching purported evidence (see Exhibit B of Defendant's Motion to Dismiss) of the alleged debt RJBA claims it had authority to collect, and upon which documentation it presumes to have authority to make inquiries into Plaintiff's Experian consumer report.  The Defendant never mailed the unauthenticated documents of Exhibit B to the Plaintiff at any time.  In October 2011, Plaintiff sent a validation request to RJBA after having received a dunning letter on or around October 17, 2011.  RJBA alleges that the request for validation sent to RJBA by Plaintiff specifically stated to "cease and desist any further communications with him" (see Defendant's Motion to Dismiss, Section II "Factual Background").  Defendant misconstrues the facts, as Plaintiff never used the phrase "cease and desist any further communication" in his letter to RJBA, but rather laid out clearly what was being requested to help further substantiate their claim and invited them to send the information.  Plaintiff never received any further communication from RJBA.

### IV.   ARGUMENTS AND AUTHORITIES

**A. Defendant's claim that Plaintiff's Complaint fails to state a cause of action is unavailing**

Defendant suggests that Plaintiff "failed to state all elements of a cause of action against RJBA" (see Defendant's Motion to Dismiss, "Factual Background"). The deficiency suggested to support this contention is that Plaintiff did not identify RJBA as a debt collector in the Complaint (see Defendant's Motion to Dismiss "Authority and Argument" Section B). Plaintiff is unaware of any case law that supports such a theory, and accordingly Defendant offers no case law in support thereof. Plaintiff readily admits that RJBA is a debt collector, and would gladly amend the Complaint to reflect this if the Court deems necessary.

### B. Defendant's claim that it has permissible purpose simply because it is a debt collector is misguided

RJBA would attempt to convince this Court that simply because they are a debt collector that they are granted *carte blanche* authority into individual consumer reports. RJBA cites the same provision of the FCRA that Plaintiff cited in the complaint to support this, namely the relevant portion of 15 U.S.C. § 1681(b). Defendant openly admits that it does not have an account with the Plaintiff, stating that it was allegedly retained by Citizens Bank of Rhode Island to pursue collection of an alleged outstanding debt. As such, there is no direct account relationship between Plaintiff and Defendant. If Defendant seeks to rest its case on the notion that it had a permissible purpose because they were acting on behalf of another entity, then they must prove their authority to so act by proving their agency status. No such evidence is before this Court and obviously it is a matter that can only adequately be addressed and resolved in discovery.

The debt collection industry in general has been known to skirt the law when it comes to making inquiries into consumer reports, which overshadows Defendant's overall tone in its Motion to Dismiss that because it is a debt collector that it is essentially immune from FCRA litigation alleging an impermissible purpose. Attached hereto as Exhibit A is a letter from

Clarke W. Brinckerhoff, a Federal Trade Commission (FTC) staff attorney, in response to a letter from Mr. Mr. Kenneth J. Benner of the American Council on Consumer Awareness regarding activities observed by a debt collector and a major credit bureau in which the debt collector and credit bureau assert that a collector has a "legitimate business need" to obtain a random selection of credit histories for the purpose of determining overdue accounts and then contacting the creditors on the account to solicit collection business. Mr. Brinckerhoff rightly notes that such a situation is clearly not a permissible purpose. Although RJBA was not specifically identified in this FTC letter, it does cast doubt on their overall position that *merely because they are a debt collector* they have a permissible purpose.

In light of the present controversy the revelations in Mr. Brinckerhoff's letter do pose some questions as to why RJBA acquired Plaintiff's Experian consumer report on two separate occasions in less than seven days. What could the *possible* need be to access Plaintiff's consumer report twice in such a short timespan? Can there be that much difference in Plaintiff's consumer report from October 7th to October 13th, 2011? Is it possible that RJBA engaged in conduct similar as that described in Mr. Brinkerhoff's letter? At the present time these questions are obviously unanswerable, but it highlights the need for Plaintiff to conduct discovery to elucidate the answers.

### C. Defendant's claim that it has demonstrated a permissible purpose to the Court in its Motion to Dismiss, and thus has a complete defense to Plaintiff's allegations, is unpersuasive.

1) <u>Case law used by Defendant to sustain its position is misconstrued</u>

Defendant offers two cases that bear only limited relevance to the present controversy and as such bring little aid to their defense: *Ostrander v. Unifund Corp.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 25040 (W.D.N.Y. Mar. 28, 2008) and *Stonehart v. Allen Rosenthal, et. al.,* No. 01 Civ.

651, 2001 WL 910771 (S.D.N.Y., Aug. 13, 2001). Regarding *Ostrander*, RJBA correctly asserts that the court "dismiss[ed] FCRA claims against debt buyer/seller and law firm engaged to collect debt owed by Plaintiff." In reading what RJBA is offering in support of its defense reveals why the court was justified to dismiss the FCRA claims. In the course of the proceedings in that case the agency status of the debt buyer was never disputed, which allowed that court to naturally arrive at the conclusion that the debt buyer had a permissible purpose. The present controversy differs substantially on this very point as Plaintiff disputes the alleged agency status of RJBA, and for this reason the use of *Ostrander* in support of their defense of having a permissible purpose is unconvincing.

Regarding *Stonehart*, Defendant cites the opinion of Judge Scheindlin to support the contention that "a showing of a permissible purpose is a complete defense." Plaintiff agrees with Judge Scheindlin's ruling entirely, but RJBA cites this case upon the presumption that all issues of material fact have already been adjudicated before this Court. In *Stonehart*, the motion in review was a motion for summary judgment—which presumes some level of discovery had already been conducted by both parties. Obviously in the present matter discovery has not yet even been initiated and so the ruling on summary judgment in that case is improperly and prematurely applied to Defendant's Motion to Dismiss in the present controversy, and as such affords no strength to their claim.

2) <u>Documents in Exhibit B of Defendant's Motion to Dismiss to support permissible purpose claim are hearsay and raise additional issues of material fact</u>

Defendant goes outside the four corners of the Complaint by introducing documents purported to act as verification of an alleged debt. RJBA would have the Court render a trial and enter judgment in their favor that the documents in Exhibit B demonstrates *prima facie*

evidence of a permissible purpose to access Plaintiff's consumer report. This attempt is misguided on several fronts.

First, by introducing the documents in Exhibit B Defendant seeks to supplant the allegations in the complaint by *attempting* to satisfy the verification requirements of the Fair Debt Collection Practices Act, and by proxy justifying their permissible purpose claim under the Fair Credit Reporting Act. The unauthenticated, and in places almost illegible, documents they enlist to their cause do not even meet the requirements of verification according to the Fair Debt Collection Practices Act, and as such their attempt to convince the Court of their permissible purpose via this route is ineffectual—as evidenced by *Spears v. Brennan* 745 N.E.2d 862, 878-79 (Ind. App. 2001) "The contract in no way provides sufficient verification of the debt."

Secondly, in truth there exists no authenticated evidence before this Court that establishes that RJBA had a permissible purpose as it asserts. The documents in Exhibit B do not have a proper foundation established with a chain of custody to show the document is reliable, such as an attached affidavit attesting to the veracity of the information by someone with firsthand knowledge of the alleged account and/or business record procedures with the alleged original creditor Citizens Bank. As such, the documents in their present form are hearsay as they do not satisfy the requirements of section 803(6) of the Federal Rules of Evidence.

Third, a cursory examination of both pages in Exhibit B reveals some problematic anomalies that can only be made clear through discovery. The date printed on the top of both pages, apparently from a fax machine, reads "May 12, 2011." In light of Defendant's claims that they allegedly secured some presumed authority to the alleged account in October 2011,

serious questions are raised in terms of the underlying documents lineage. Who faxed who these documents on May 12, 2011? If RJBA allegedly obtained some agency status with the alleged original creditor Citizens Bank of Rhode Island "on or about October 2011" why are they in possession of documents dated May 12, 2011? Furthermore, the page numbers listed on the top of each document—also appearing to be from a fax machine—read "P. 22" and "P. 24", which suggests that there are additional pages not in view that relate in some way to the included pages. Why is page 23 not included here? What are the contents of the other 20 plus pages of the fax sent that day, and do they bear any relevance to the present controversy? Thus, the documents RJBA introduces here raise a sufficient number of questions that crave answers, for which reason the Defendant should be directed to answer the Complaint so that the discovery process can be engaged.

Finally, the present action is in large part about the *act* of having initiated inquiries into Plaintiff's private consumer report. To be able to have obtained Plaintiff's consumer report on two separate occasions, RJBA was required by law to submit a certification to Experian specifically in relation to each of these transactions according to 15 U.S.C. § 1681b(f):

> A person shall not use or obtain a consumer report for any purpose unless:
> 1. the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> 2. the purpose is certified in accordance with section 1681e by a prospective user of the report through a general or specific certification.

These are details that obviously can only be adequately brought to light through the discovery process, as this information is presently not before this Court.

## V.   CONCLUSION

For the foregoing reasons, the Court should reject Defendant's attempt to truncate the litigation process under settled provisions of civil procedure. RJBA would have this Court

consider facts outside the four corners of the Complaint to bolster their legal conclusions premised on extraneous documents that do not meet the evidentiary requirements of the Federal Rules of Evidence and which themselves raise more issues of material fact. Defendant has failed to show that the law provides no relief from the facts as alleged by Plaintiff and, having failed to do so, their Motion to Dismiss must be denied and they should be directed to answer the Complaint. In the alternative, Plaintiff respectfully asks leave to amend the Complaint if the Court deems necessary.

Dated: March 18, 2013

Respectfully submitted,

Chad R. Goetz
P.O. Box 234
Liverpool, New York 13088
315-466-9719
cgoetz74@gmail.com

*Plaintiff*

# EXHIBIT A



# Federal Trade Commission
## Protecting America's Consumers

**Division of Financial Practices**
**Clarke W. Brinckerhoff**
**Attorney**
**202-326-3224**

**April 30, 1999**

Mr. Kenneth J. Benner
American Council on Consumer Awareness
Post Office Box 17291
St. Paul, Minnesota 55117

Re: Sections 604(a)(3), 607(e), and 609(a)(3) of the Fair Credit Reporting Act

Dear Mr. Benner:

This responds to your letters concerning whether the Fair Credit Reporting Act ("FCRA") permits a party to obtain a credit report on a consumer under certain circumstances. We list the three questions you posed verbatim, with our opinion following each.

*1. How long after a consumer terminates an account does a previous credit card issuer or lender have access to the consumer's credit file?*

Section 604(a)(3)(A) of the FCRA provides a consumer reporting agency ("CRA," usually a credit bureau) with a permissible purpose to provide a report on a consumer to a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."(1) Once an account is closed because the consumer has paid the debt in full (and also, in the case of an open-end account such as a credit card account, notified the creditor to close the account), it is our view that no permissible purpose exists for a CRA to provide file information on a consumer to the creditor. Because there no longer exists any account to "review" and the consumer is not applying for credit, the FCRA provides no permissible purpose for the creditor to receive a consumer report from a CRA. I enclose a recent staff opinion letter (Gowen, 04/29/99) that discusses this issue in more detail.

*2. Is a permissible purpose for obtaining consumer credit reports for the sole purpose of determining possible debt by a collection agency for the purpose of soliciting collection business from creditors?*

No. You report that a debt collector and a major credit bureau assert that the collector has a "legitimate business need" to obtain a random selection of credit histories for the purpose of determining overdue accounts and then contacting the creditors on the account to solicit collection business. Section 604(a)(3)(F)(ii) does provide a permissible purpose to a party that "has a legitimate business need for the information to review an account to determine whether the consumer continues to meet the terms of the account." In our view, this section authorizes a provider of an existing account (e.g., a bank that has established a checking account with the consumer) to obtain a report on the individual. In the scenario you described, the debt collector has no "account" to "review" when it orders a credit report (in fact, no "account" may exist for some consumers), but instead seeks to randomly examine credit files in order to solicit collection business from creditors. The collector is not authorized to obtain (nor a CRA to furnish) a consumer report for that purpose. The entire focus of Section 604 is to protect the confidentiality of consumers' personal data in the files of CRAs, by restricting access to parties who have a specific need for it.(2) If a third party such as a debt collector can review the consumer's file to see if there exists any account that the creditor has reported as delinquent, the section has totally failed its goal.

*3. Is it permissible for a business doing credit with a consumer to obtain credit information under false pretenses, i.e. hiring another firm to solicit credit file information without disclosing the name of the party actually seeking the credit file information? In these cases the consumer attempting to determine who has accessed his credit file, as required, is provided with names of parties unknown to him.*

No. Section 607(e)(1)(A) provides that the second firm may "procure a consumer report for purposes of reselling the report (or any information in the report)" only if it discloses "the identity of the end-user of the report (or information)" to the credit bureau. In our view, the firm hired to procure credit file information would be required to comply with this provision. Section 609(a)(3) requires the credit bureau, when responding to a consumer attempting to determine who has accessed his file, to identify the end-user -- not the intermediary -- as the recipient of the report. Thus, the amended FCRA results in the consumer being provided with the parties who actually used his or her credit file information.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

1. Section 604(a)(3)(F)(ii) provides a similar "review" purpose in connection with accounts (such as checking accounts) that do not involve credit.

2. "The bill also seeks to prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information. ... (Section 604) requires that the information in a person's file be kept confidential and used only for legitimate business transactions." S. Rept. 91-517, 91st Cong., 1st Sess. 1 (1969).

Case 5:13-cv-00051-NAM-DEP   Document 10   Filed 03/18/13   Page 12 of 13

Last Modified: Friday, June 24, 2011

## CERTIFICATE OF SERVICE

UNDER PENALTY OF PERJURY, I certify that a true and correct copy of the foregoing *Plaintiff's Response in Opposition to Defendant Richard J. Boudreau & Associates, LLC's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(B)(6)* was mailed with postage pre-paid to the following on March 18, 2013:

Heather Q. Wallace
c/o Richard J. Boudreau & Associates, LLC
41 Kenosia Avenue, Ste. 302
Danbury, CT  06810

Signed this 18th Day of March, 2013

Chad R. Goetz
P.O. Box 234
Liverpool, New York 13088
315-466-9719
cgoetz74@gmail.com

*Plaintiff*